JOSEPH KLADIVO, Appellee, v. JAMES GAINES, Appellant.

**REFORMATION OF INSTRUMENTS:** Mutual Mistake in re Mortgages. A reformation of a land contract will be granted on a clear showing that an assumption of a mortgage of $6,500 at 6 per cent was a mutual mistake, in that what was really intended was the assumption of two mortgages, one for $6,500, at 5½ per cent, and one for a sum equal to ½ of 1 per cent on said amount.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

JUNE 25, 1921.

ACTION in equity to reform a written contract for the sale of real estate. Decree entered in favor of plaintiff, and the defendant appeals.—*Affirmed.*

*Voris & Haas,* for appellant.

*C. W. Bingham,* for appellee.

FAVILLE, J.—The appellee was the owner of 160 acres of land in Linn County, which he sold through an agent to the appellant at the agreed price of $20,000. The agent drew a written contract, which was signed by the parties. The appellee claims that the contract was in error in two respects: First, that the real estate was not correctly described in the contract; and secondly, that the contract was in error in describing the mortgage that was to be assumed by the purchaser. It is conceded by the appellant that the land was incorrectly described in the contract. The only question for our consideration is whether or not the contract should be reformed in respect to the indebtedness assumed. Both parties testified in the case, and both agree that the purchase price of the premises was $20,000; that it was to be paid by a cash payment of $1,000, $3,000 on March 1, 1920, and the balance of $16,000 was to be paid by the assumption of a mortgage of $6,500 and the balance of $9,500 by the giving of a promissory note and second mortgage on the land.

The question in controversy is solely with regard to the mortgage of $6,500. In respect to this matter, the contract, as originally drawn, recites:

"The balance of $16,000.00 by assuming 1st mortgage of $6,500.00 due Midland Mortgage Company drawing 6 per cent semiannual interest and due in 1929, March 1st, 1929, with privilege of paying $500.00 on any interest-paying day beginning 1921," etc.

The contract also provides that the first party was to furnish an abstract of title, showing good title, free and clear of liens and incumbrances, "except a mortgage of $6,500.00, due the Midland Mortgage Co. drawing 6% interest and due in 1929."

The evidence is clear and convincing that, at the time of making the contract, it was orally agreed between the parties that the appellant was to assume on the premises a mortgage of $6,500, with interest at 6 per cent. The point upon which the case turns is that the contract was erroneously drawn, to describe this mortgage of $6,500 as being payable to the Midland Mortgage Company, and drawing 6 per cent interest. The facts, as disclosed by the evidence, are that the indebtedness of $6,500 which the parties had in contemplation, and about which they were contracting, and which the appellant agreed to assume, was a mortgage for the principal sum of $6,500; and that the same was payable to the Merchants Loan & Trust Company, instead of to the Midland Mortgage Company. Also, the said mortgage of $6,500 drew interest at the rate of 5½ per cent, and the ½ of 1 per cent interest was represented by a commission mortgage, payable to the Midland Mortgage Company, and due without interest in installments at the same time the interest became due on the $6,500 mortgage.

The evidence shows that appellant understood that he was to assume a mortgage of $6,500, and that he was to assume and pay 6 per cent interest thereon. But it is contended in behalf of the appellant that the contract provided, and he understood, that the mortgage was payable to the Midland Mortgage Company, of Cedar Rapids, Iowa, instead of to the Merchants Loan & Trust Company, of Chicago, and that he did not contract or

agree to assume and pay a second mortgage of ½ of 1 per cent to the Midland Mortgage Company.

From a careful examination of the evidence, we are satisfied that neither one of the parties to the contract was fully informed in regard to the conditions surrounding the incumbrance that was to be assumed. The evidence shows that the Midland Mortgage Company had negotiated the loan for the appellee; that, when the loan was made, it was made by this company; that it took the mortgage of $6,500 at 5½ per cent direct to the Merchants Loan & Trust Company, of Chicago, for which it was acting as agent, and took the commission mortgage of ½ of 1 per cent to itself. At the time of drawing the contract between the appellant and the appellee, some discussion arose in regard to the rate of interest on this mortgage, and the appellee went to the office of the Midland Mortgage Company, and shortly after returned to the office of the real estate agent, where the contract was being prepared, and stated that the mortgage of $6,500 drew 6 per cent interest.

There is a conflict in the evidence as to just what took place at the office of the mortgage company, and whether both parties or only the appellee went there. We are convinced from an examination of the record that neither the appellant nor the appellee was fully advised of the situation respecting this indebtedness. They were agreed upon one proposition: namely, that the appellant was to assume an indebtedness of $6,500 against the land, at 6 per cent interest. In attempting to put this into a written contract, they referred to it ''as a mortgage of $6,500 due Midland Mortgage Company drawing 6 per cent semiannual interest.''

The trial court entered a decree reforming the contract and correctly describing the land to be conveyed, and also providing that the contract should be reformed by describing the indebtedness which was assumed by the appellant as being evidenced by a mortgage of $6,500 to the Merchants Loan & Trust Company, of Chicago, bearing 5½ per cent interest, and a mortgage to the Midland Mortgage Company, representing ½ of 1 per cent interest on said $6,500.

It is urged by the appellant that there was no such proof of a mutual mistake between the parties as justifies a court of

equity in reforming a written instrument.   It is urged that the
trial court made a new contract for the parties by reformation
of the written instrument, and that the essential elements of a
basis of reformation were lacking.

We think the decree of the trial court was amply justified,
and was correct.   The evidence satisfies us that neither one of
the parties to the contract understood the true condition in re-
gard to the loan of $6,500.   Neither one of them appears to have
been informed, at the time, of the status in respect to the main
mortgage and the commission mortgage, and that the main mort-
gage ran to one party and the commission mortgage to another.
Neither one of them appears to have had any definite informa-
tion on the subject, but both of them understood and agreed that ·
the appellant was to assume and pay an indebtedness against
the premises of $6,500, with interest thereon at 6 per cent.   They
were mutually mistaken as to the true condition in which the
indebtedness was represented, but they were agreed on the
amount of the indebtedness and the rate of interest which it bore.
In any event, the appellant did not elect to ask for a rescis-
sion.   He concedes, in effect, that he was to assume a mortgage
of $6,500, with interest at 6 per cent.   The court did not make
a new contract for the parties.   It ascertained the real contract,
as shown by the evidence, and reformed the writing to express
that contract.

We have examined the record with care.   We are con-
vinced that it was clearly within the well-recognized powers of
a court of equity, under the facts disclosed in this case, to de-
cree a reformation of this contract, to comply with the facts as
they existed, to effectuate and carry out the clear understanding
of the parties as to the indebtedness assumed and the interest
to be paid thereon.   Under the facts, as disclosed without dis-
pute in the testimony, and under the admissions of the appel-
lant, as shown in the record, there can be no question of the
powers of a court of equity to decree reformation to effectuate
the true purpose and intent of the parties, as was done in the
instant case.

The decree of the trial court is correct, and it is—*Affirmed.*

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.